AFFIANT/DECLRAANT SAYETH NOTHING FURTHER

SIGNED AND SWORN TO OR AFFIRMED
BEFORE ME _7th_ _December_, 2015.

DECLARANT/AFFIANT'S SIGNATURE            x _Larita Burrell_

                        Print declarant's/affiant's name: _Larita Burrell_

_Annette Adams Rucker_
NOTARY PUBLIC

OFFICIAL SEAL
ANNETTE ADAMS RUCKER
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:07/02/17

Robert L. Anderson, Esq.
For Plaintiff, Larita Burrell
175 W. Jackson, #2275
Chicago, IL. 60604
(312) 427-3536
Attorney #0051322

12 -

# STATE OF ILLINOIS
## DEPARTMENT OF HUMAN RIGHTS
### INVESTIGATION REPORT

**Complainant:** Larita Burrell      **IDHR No.:** 2013CF1459

**Respondent:** United Parcel Service      **EEOC No.:** 21BA30486

**Investigator:** MFJ      **Supervisor:** _Sull_      **Date:** 7.5.13

**Issue/Basis:**                 **Finding:**

A. Sexual harassment            A. Lack of substantial evidence

**Jurisdiction:**

| | |
|---|---|
| Alleged violation: | A. July 2012 – November 15, 2012 |
| Charge filed: | December 3, 2012 |
| Charge perfected: | December 3, 2012 |
| Amendments: | None |
| Number of employees: | 2161 |

**Verified Response:**

Due: February 15, 2013
Received: February 11, 2013
Timely: __X__ Untimely: _____      **Group Exhibit A**
If untimely, good cause shown: Yes _____ No _____

**Employment Data:**

Respondent's 2012 EEO report show that Respondent has 2161 employees (**Exhibit F**). Of those employees, 550 are female.

**Uncontested Facts:**

1. Respondent is a package delivery service.
2. Complainant was hired in September 2005 and is a driver for Respondent.
3. Mike Adams is a driver for Respondent.
4. There were no incidents of sexual harassment from August 1, 2012 through November 6, 2012.
5. Complainant reported sexual harassment from Mike Adams to Respondent verbally on November 12, 2012 and in writing on November 14, 2012.
6. There were no further incidents of sexual harassment after November 12, 2012.

Charge No.: 2013CF1459
Page 2 of 5

## Complainant's Allegations-Count A:

Complainant alleges that Mike Adams (male), driver, engaged in at least two incidents of sexual conduct that were not trivial in nature in that Adams made sexually offensive comments including calling her easy in front of co-workers and saying if he was younger she'd be sprung on him. Complainant reported the sexual harassment to management and Respondent failed to take action. Complainant alleges that Adams' conduct created a hostile and offensive work environment which interfered with Complainant's ability to perform her job.

## Respondent's Defenses-Count A:

Respondent's position is that Respondent took prompt and reasonable corrective measures when Complainant reported the sexual harassment allegations.

## Investigation Summary-Count A:

### A.  Complainant's Evidence.

1.  Complainant stated that in July 2012, Adams told Larry Davis (male), Supervisor, that he was taking Complainant "too personally". Complainant stated Adams told Davis that Complainant and Davis were "messing around". Davis took Adams into Abe's (last name unknown) office, Manager, because of what Adams had said. Adams then apologized to Complainant. Complainant stated that she did not file a complaint with Respondent.

2.  Complainant stated that on November 7, 2012, she worked with Adams for about four hours. Adams told her "If I was a couple of years younger, you'd be sprung on me". Adams saw Complainant talking to a man and later told her "Don't be too easy. Don't give it up so easy."

3.  Complainant stated that on November 12, 2012, she was working a route that Adams wanted to do. Adams tried taking the board out of Complainant's pocket and said "I can tell you easy". Complainant made a verbal complaint to Paul Rakow (male), Center Manager, about Adams that day. Rakow told Complainant to put her allegations in writing.

4.  Complainant turned in her written statement on November 14, 2012, to Rakow **(Exhibit D)**.

5.  Complainant stated these comments were unwelcome and unwanted and that she had to go on medical leave beginning November 19, 2012, due to the stress that Adams comments put her under **(Exhibit E)**.

### B.  Respondent's Evidence.

1.  Respondent's Professional Conduct and Anti-Harassment Policy states Respondent will not tolerate harassment of any employee by anyone for any reason. Employees who witnesses objectionable or they may subjected to

Charge No.: 2013CF1459
Page 3 of 5

objectionable conduct must report it immediately to a supervisor, or manager, A Human Resources representative, the Human Resources manager, the Employee Relations manager or the UPS Help Line. All reports will be promptly and thoroughly investigated and Respondent will take immediate and appropriate corrective action if it determines that a policy violation has occurred **(Exhibit C)**.

2. Paul Rakow (male), Manager, stated that on November 12, 2012, Complainant verbally stated to him that Adams was making comments. Rakow told Complainant to provide a written statement regarding her allegations, which Complainant provided on November 14, 2012 **(Exhibit D)**.

3. Rakow stated he reviewed the allegations, and then called Human Resources to determine the next step, which would be meeting with Adams. Rakow informed Adams on November 14, 2012, that he would need union representation for a meeting they would have on November 15, 2012. Rakow stated during the meeting on November 15, 2012, he discussed the allegations and Respondent's anti-harassment policy **(Exhibit B)**.

4. Rakow stated he then informed Human Resources of the outcome of the meeting with Adams and that Adams denied the allegations. A meeting was then planned for November 19, 2012, for Rakow, Marquita Barnes (female), Human Resources Manager, and Complainant to discuss the investigation into her allegations.

5. Marquita Barnes (female), Human Resources Manager, stated that on November 16, 2012, she notified Complainant of the meeting scheduled for November 19, 2012, to discuss her allegations. Barnes stated that when Complainant showed up for work on November 19, 2012, she had a doctor's note to be off work, so the meeting did not take place.

6. Barnes stated that Complainant was off on leave from November 19, 2012, through sometime in January. Barnes stated that the allegations were not substantiated, because Complainant was not there to assist in the investigation.

7. Barnes stated that the July 2012 incident was revealed in Respondent's investigation in November 2012. Davis informed her that Adams apologized and nothing further had happened to his knowledge.

8. Barnes stated that she reviewed the anti-harassment policies **(Exhibit C)** with Adams again in late November 2012 or early December 2012.

9. Barnes and Rakow stated that Complainant has not reported any further sexual harassment from Adams.

C. **Complainant's Rebuttal.**

1. Complainant stated that it is unfair that when she went back to work in January 2013, Respondent did not say anything to her about her allegations.

Charge No.: 2013CF1459
Page 4 of 5

## Analysis:

The investigation revealed that Respondent initiated an investigation the same day they received Complainant's written allegations of sexual harassment. It is uncontested that the incident in July 2012 was immediately addressed by Respondent and there was no complaint filed by Complainant at that time. Complainant stated that there were no further incidents of sexual harassment between July 2012 and November 7, 2012. It is uncontested that the Complainant verbally informed Respondent of harassment by Adams, on November 12, 2012. Evidence shows Respondent addressed Complainant's allegations of sexual harassment, and Complainant concedes that after reporting the sexual harassment, she has been subjected to no other incidents of sexual harassment. Respondent found no evidence that Adams violated Respondent's sexual harassment policy.

## Findings and Conclusion-Count A:

A finding of lack of substantial evidence is recommended because:

The investigation failed to reveal, and the Complainant failed to show, that Respondent failed to take appropriate corrective action once Complainant brought her allegations of sexual harassment to Respondent's attention. The investigation revealed that Respondent promptly started investigating Complainant's allegations and it is uncontested that there were no further incidents of sexual harassment after she had reported it to Respondent. Evidence shows Respondent took remedial action to address the Complainant's allegations.

## Witness List:

A. Complainant (female) (ffc)
   19 S. Hoyne Ave., Apt. B
   Chicago, IL 60612
   312-532-7161

B. Paul Rakow (male), Center Manager (ffc)
   c/o William Walden
   Quarles & Brady LLP
   300 N. LaSalle St., Ste. 4000
   Chicago, IL 60654
   312-715-5111

C. Marquita Barnes (female), Human Resources Manager (ffc)
   c/o William Walden
   Quarles & Brady LLP
   300 N. LaSalle St., Ste. 4000
   Chicago, IL 60654
   312-715-5111

Charge No.: 2013CF1459
Page 5 of 5

## Exhibits:

A.     Verified Response Good Cause Determination.

B.     Respondent's 2012 EEO report.

C.     Respondent's Professional Conduct and Anti-harassment Policy.

D.     Complainant's written statement reporting the sexual harassment dated November 14, 2012.

E.     Complainant's doctor note dated November 27, 2012

F.     Respondent's 2012 EEO report

IRSHELL
Rev 11/09

BURRELL GR.

EXHIBIT:

IDHR #13 CF-3086

## STATE OF ILLINOIS
## DEPARTMENT OF HUMAN RIGHTS
## INVESTIGATION REPORT

| | | | |
|---|---|---|---|
| **Complainant:** | Larita Burrell | **IDHR No.:** | 2013CF3068 |
| **Respondent:** | United Parcel Service | **EEOC No.:** | 21BA31631 |

**Investigator:** WPS       **Supervisor:** _____ *NEW* **Date:** _5-14-14_

| **Issue/Basis:** | **Finding:** |
|---|---|
| A. Harassment/retaliation for opposing discrimination | A. Lack of substantial evidence |
| B. Unequal job assignment/retaliation for opposing discrimination | B. Lack of substantial evidence |
| C. Written Warning/retaliation for opposing discrimination | C. Lack of substantial evidence |
| D. Reduction in hours/retaliation for opposing discrimination | D. Lack of substantial evidence |

**Jurisdiction:**

| | | |
|---|---|---|
| Alleged violation: | A | January 2013 through May 7, 2013 |
| | B | May 1, 2013 |
| | C | April 24, 2013 |
| | D | May 1, 2013 |
| Charge filed: | | May 9, 2013 |
| Charge perfected: | | May 9, 2013 |
| Amendments: | | None |
| Number of employees: | | 2161 |

**Staff note:** In Count B of Complainant's charge it states Complainant received unequal job assignments in January 2013. In allegation 2 it states it occurred since May 2013. When asked by staff for clarification of the conflicting dates Complainant stated that the unequal job assignments occurred in May 2013.

**Verified Response:**

Due:         July 16, 2013
Received:    July 12, 2013
Timely:    X   Untimely: ____
If untimely, good cause shown:  Yes ____ No ____  (Group Exhibit A)

**Employment Data:**

Respondent's EEO report indicates it employs 2161 individuals.

Charge No.: 2013CF3068
Page 2 of 11

**Uncontested Facts**:

1. Respondent is in the business of delivering packages to locations throughout the world.

2. Respondent hired Complainant in September 2005. Complainant is currently a Swing Package Car Driver.

**Complainant's Allegations-Count A**:

Complainant, a Swing Package Car Driver, alleges that she was harassed from January 2013, through May 7, 2013, in retaliation for filing charge 2013CF1459 against Respondent and Charge 2013CN1460 against co-worker Mike Adams with the IDHR on December 3, 2012.

**Respondent's Defenses-Count A:**

Respondent denies it harassed Complainant in retaliation for filing charges with the IDHR against it and Complainant's co-worker, Mike Adams on December 3, 2012.

**Investigation Summary-Count A:**

A. **Complainant's Evidence:**

1. Complainant stated that on December 3, 2012, she filed charges against Respondent and co-worker, Mike Adams with the IDHR. Complainant stated that from January 2013, through May 7, 2013, Dave Kimmel (no protected activity, no P/A). Dispatcher Supervisor, and Mike Adams (no P/A), Package Car Driver, and her co-workers harassed her in retaliation for filing the charges. Complainant stated that she was harassed in the following manner;

   - Fellow employees did not talk to her and it was rumored that no one wanted to work with her.

   - Dave Kimmel overlooked Complainant was for route assignments.

   - Dave Kimmel assigned less senior employees to routes that she could perform and she was sent home.

   - Mike Adams told a Package Car Driver, Espinoza to take the UIC route so she could not get it.

   - Espinoza wanted to leave early and asked Kimmel to assign Complainant to the UIC route, Kimmel refused and sent her home instead.

   - Respondent accused her of being on unauthorized leave from November 2012 through January 2013.

2. Complainant stated that the adverse actions followed the filing of the charges

Charge No.: 2013CF3068
Page 3 of 11

       within such a period of time to raise an inference of retaliatory motivation.

B. **Respondent's Evidence:**

1. Marquita Barnes (no P/A), Area Human Resources Manager, stated that Respondent's Professional Conduct and Anti-Harassment policy (**Exhibit C**), states harassment of any person or group of persons on the basis of race, sex, national origin, disability, sexual orientation, age, or religion is a form of unlawful discrimination which is specifically prohibited by Respondent and which may subject Respondent and/or individual harasser to liability. Respondent will not tolerate harassment of any employee by anyone for any reason. Barnes stated that Respondent's Retaliation Policy (**Exhibit D**), states that Respondent's commitment to integrity includes a responsibility to foster an environment that allows people to report violations without the fear of retaliation or retribution. No one should be discouraged from using any available channel within the organization. Anyone who retaliates against another employee for reporting known or suspected violations of Respondent's legal or ethical obligations is in violation of the Code and subject to disciplinary action up to and including dismissal. Retaliation may also be a violation of the law, and as such, could subject both the individual offender and Respondent to legal liability.

2. Barnes stated that Respondent has no knowledge of Complainant's allegation that her fellow employees did not talk to her and it was rumored that no one wanted to work with her. Barnes stated that even if it occurred it does not constitute an adverse employment action when it did not result in material harm. Barnes stated that Mike Adams (no P/A), Package Car Driver, had no power to assign or de-assign delivery areas and could not influence Espinoza to take the UIC route so Complainant could not get it.

3. David Kimmel (no P/A), Scheduler, stated that Complainant is a Swing Package Car Driver which means she did not have enough union seniority to have a specific assigned route. Kimmel stated that that Respondent puts up a bid sheet, and swing drivers including Complainant can bid on open assignments. Kimmel stated that Complainant's allegations about being overlooked for assignments are false as she could have placed multiple bids on assignments and would have received an assignment. Kimmel stated that he has no knowledge of Complainant's allegation that he sent her home instead of Espinoza.

4. Barnes stated that Respondent did not accuse Complainant of being on unauthorized leave from November 2012, through January 2013, as she was on Family and Medical Leave during this period (**Exhibit E**).

C. **Complainant's Rebuttal:**

1. None offered.

Charge No.: 2013CF3068
Page 4 of 11

### Analysis:

The investigation revealed that Respondent's Professional Conduct and Anti-Harassment policy states harassment of any person or group of persons on the basis of race, sex, national origin, disability, sexual orientation, age, or religion is a form of unlawful discrimination which is specifically prohibited by Respondent, and which may subject Respondent and/or the individual harasser to liability. Respondent will not tolerate harassment of any employee by anyone for any reason. The investigation that Respondent's Retaliation Policy states that Respondent's commitment to integrity includes a responsibility to foster an environment that allows our people to report violations without the fear of retaliation or retribution. No one should be discouraged from using any available channel within the organization. Anyone who retaliates against another employee for reporting known or suspected violations of Respondent's legal or ethical obligations is in violation of the Code and subject to disciplinary action up to and including dismissal. Retaliation may also be a violation of the law, and as such, could subject both the individual offender and Respondent to legal liability. Complainant maintains that on December 3, 2012, she filed charges against Respondent and co-worker, Mike Adams with the IDHR. Complainant maintains that from January 2013 through May 7, 2013, Dave Kimmel (no P/A), Dispatcher Supervisor, and Mike Adams (no P/A), Package Car Driver, and her co-workers harassed her in retaliation for filing the charges. Complainant maintains that she was harassed in the following manner;

- Fellow employees did not talk to her and it was rumored that no one wanted to work with her.

- Kimmel overlooked Complainant was for route assignments.

- Kimmel assigned less senior employees to routes that she could perform and she was sent home.

- Mike Adams told a package car driver, Espinoza to take the UIC route so she could not get it.

- Espinoza wanted to leave early and asked Kimmel to assign Complainant to the UIC route; Kimmel refused and sent her home instead.

- Respondent accused her of being on unauthorized leave from November 2012 through January 2013.

Respondent's position is that it has no knowledge of Complainant's allegation that her fellow employees did not talk to her and it was rumored that no one wanted to work with her. Respondent's position is that even if it occurred it does not constitute an adverse employment action when it did not result in material harm. Respondent's position is that Mike Adams (no P/A), Package Car Driver, had no power to assign or de-assign delivery areas and could not influence Espinoza to take the UIC route so Complainant could not get it. Respondent's position is that Complainant is a Swing Package Car Driver which means she did not have enough union seniority to have a specific assigned route Kimmel stated that Respondent puts up a bid sheet

Charge No.: 2013CF3068
Page 5 of 11

bid and swing drivers including Complainant can bid on open assignments. Complainant's allegations about being overlooked for assignments are false as she could have placed multiple bids on assignments and would have received an assignment. Respondent position is that Dave Kimmel has no knowledge of Complainant allegation that he sent her home instead of Espinoza. Respondent's position is that it did not accuse Complainant of being on of being on unauthorized leave from November 2012 through January 2013, as she was on Family and Medical Leave during this period. The investigation revealed that Complainant's FMLA was approved by Respondent for the period of November 19, 2012 through January 2, 2013.

### Findings and Conclusion-Count A:

A finding of **Lack of Substantial Evidence** is recommended because:

The evidence shows Complainant's allegation that her fellow employees did not talk to her and it was rumored that no one wanted to work with her did not result in material harm. The evidence shows that Mike Adams was a Package Car Driver, and had no power to assign or de-assign delivery areas and could not influence Espinoza to take the UIC route so Complainant could not get it. The evidence shows Respondent puts up a bid sheet bid and swing drivers including Complainant can bid on open assignments. Complainant's allegations about being overlooked for assignments are not supported by this process. The evidence shows that Respondent did not accuse Complainant of being on unauthorized leave from November 2012 to January 2013, as it approved her FMLA for this period. The investigation did not find nor did Complainant provide evidence that Complainant was harassed in retaliation for previously filing charges against Respondent and Mike Adams with the IDHR.

### Complainant's Allegations-Count B:

Complainant, a Swing Package Car Driver, alleges that she was subjected to unequal job assignments in May 2013, in retaliation for filing charge 2013CF1459 against Respondent and Charge 2013CN1460 against co-worker Mike Adams with the IDHR on December 3, 2012.

### Respondent's Defenses-Count B:

Respondent denies it subjected Complainant to unequal work assignments in January 2013, in retaliation for filing charges against it and co-worker, Mike Adams on December 3, 2012.

### Investigation Summary-Count B:

A. **Complainant's Evidence:**

   1. Complainant stated that in December 2012 she filed the charges with the IDHR against Respondent and Mike Adams (no P/A), a Package Car Driver. Complainant stated that in May 2013, Dave Kimmel (no P/A), Dispatcher Supervisor, assigned her to an open status without regular pay in retaliation for filing the charges with the IDHR. Complainant stated that being in an open status meant Respondent could send you home without pay if there was no work for you to do. Complainant stated that

Charge No.: 2013CF3068
Page 6 of 11

this adverse action followed the filing of the charges within such a period of time to raise an inference of retaliatory motivation.

**B.    Respondent's Evidence:**

1. Dave Kimmel (no P/A), Dispatcher Supervisor, stated that there is no such thing as a open status. Kimmel stated he can only surmise that Complainant meant that she did not have a regularly assigned delivery area, which is precisely what a swing driver position entails. Kimmel stated that Complainant could bid on open routes and if she bid on multiple routes she and would have probably received an assignment. Kimmel stated that if she bid on only one route and did not receive it she could be sent home because there was no work for her.

2. See Respondent's evidence Count A #1

**C.    Complainant's Rebuttal:**

1. None offered.

**Analysis:**

The investigation that Respondent's Retaliation Policy states that Respondent's commitment to integrity includes a responsibility to foster an environment that allows our people to report violations without the fear of retaliation or retribution. No one should be discouraged from using any available channel within the organization. Anyone who retaliates against another employee for reporting known or suspected violations of Respondent's legal or ethical obligations is in violation of the Code and subject to disciplinary action up to and including dismissal. Retaliation may also be a violation of the law, and as such, could subject both the individual offender and Respondent to legal liability.   Complainant maintains that in December 2012 she filed the charges against Respondent and Mike Adams (no P/A), a Package Car Driver.  Complainant stated that in May 2013, Dave Kimmel (no P/A), Dispatcher Supervisor, assigned her to an open status without regular pay in retaliation for filing the charges with the IDHR. Complainant stated that this adverse action followed the filing of the charges within such a period of time to raise an inference of retaliatory motivation.  Respondent's position is that there is no such thing as an open status. Respondent's position is it can only surmise that Complainant meant that she did not have a regularly assigned delivery area, which is precisely what a swing driver position entails. Respondent's position is that Complainant could bid on open routes and if she bid on multiple routes her and would have probably received an assignment.  Respondent's position is that if she bid on only one route and did not receive it she could be sent home because there was no work for her. The investigation revealed that Complainant filed her charges with the IDHR about five months before the date of harm occurred which is to long of a period of time to raise an inference of retaliatory motivation.

Charge No.: 2013CF3068
Page 7 of 11

## Findings and Conclusion-Count B:

A finding of **Lack of Substantial Evidence** is recommended because:

The evidence shows that Complainant filed her charges with the IDHR about five months before the date of harm occurred which is to long of a period of time to raise an inference of retaliatory motivation.

## Complainant's Allegations-Count C:

Complainant, a Swing Package Car Driver, alleges that she received a written warning on April 24, 2013, in retaliation for filing charges with the IDHR on December 3, 2012, against Respondent and co-worker, Mike Adams.

## Respondent's Defenses-Count C:

Respondent denies it issued Complainant a written warning on April 24, 2013, in retaliation for filing charges against it and co-worker, Mike Adams with the IDHR. Respondent's legitimate articulated non-discriminatory reason it initially issued Complainant the warning was because Complainant's request for FMLA for April 23, 2013, was not approved and her absence on that date was another unexcused absence which followed several prior unexcused absences. Respondent stated that this warning was subsequently expunged from Complainant's file a few months later when her FMLA request for April 23, 2013, was retroactively approved.

## Investigation Summary-Count C:

A.    **Complainant's Evidence:**

1.  Complainant stated that Dave Kimmel (no P/A), Dispatcher Supervisor, issued her a written warning on April 24, 2013, for being sick on April 23, 2013, even though she had a doctor's note and the absence was covered by FMLA. Complainant stated that she received the warning in retaliation for filing charges on December 3, 2012, with the IDHR against Respondent and Mike Adams (no P/A), a package car driver. Complainant stated that the adverse action followed the filing of the charges within such a period of time to raise an inference of retaliatory motivation.

B.    **Respondent's Evidence:**

1.  Marquita Barnes (no P/A), Area Human Resources Manager, stated that Complainant's request for FMLA on April 23, 2013, was not approved and and her absence on that date was another unexcused absence which followed several prior unexcused absences which resulted in her receiving a written warning on April 24, 2013, as indicated on the Record of Supervisor's Discussions with Employee (**Exhibit E**).

Staff Note:  Respondent stated that according to the agreement with union no actual written notice of discipline can be issued. Instead the warning is noted in the Record of Supervisor's

Charge No.: 2013CF3068
Page 8 of 11

Discussions with Employee and the Employee Mention List (a record of discussions and disciplinary actions for each employee).

2. Barnes stated that a few months later Complainant's FMLA request for April 23, 2013, was retroactively approved and the record of the warning was expunged from the Employee Mentions List **(Exhibit F)**. Barnes stated that as a result Complainant received no harm from this matter. Barnes stated that Complainant was unaware that the warning was expunged because employees normally do not view their Record of Supervisor's Discussions with Employee.

3. See Respondent's evidence Count A #1.

C.  **Complainant's Rebuttal:**

1. None offered.

**Analysis:**

The investigation that Respondent's Retaliation Policy states that Respondent's commitment to integrity includes a responsibility to foster an environment that allows our people to report violations without the fear of retaliation or retribution. No one should be discouraged from using any available channel within the organization. Anyone who retaliates against another employee for reporting known or suspected violations of Respondent's legal or ethical obligations is in violation of the Code and subject to disciplinary action up to and including dismissal. Retaliation may also be a violation of the law, and as such, could subject both the individual offender and Respondent to legal liability. Complainant maintains that she received a written warning on April 24, 2013, in retaliation for filing charges on December 3, 2012, with the IDHR against Respondent and Mike Adams (no P/A), a Package Car Driver. Complainant stated that the adverse action followed the filing of the charges within such a period of time to raise an inference of retaliatory motivation. Respondent's position is Complainant's request for FMLA on April 23, 2013, was not approved and her absence on that date was another unexcused absence which followed several prior unexcused absences which resulted in her receiving the warning. Respondent's position is that Complainant's request for FMLA on April 23, 2013, was retroactively approved and the warning was expunged from her record and there was no harm suffered by Complainant. The investigation revealed that Complainant filed her charges with the IDHR over four months before the initial date of warning occurred which is to long of a period of time to raise an inference of retaliatory motivation.

**Findings and Conclusion-Count C:**

A finding of **Lack of Substantial Evidence** is recommended because:

The evidence shows that the warning of April 24, 2013, was expunged from Complainant's record and therefore she received no harm from Respondent. In addition, the evidence shows that Complainant filed her charges with the IDHR over four months before the date of the initial warning occurred which is to long of a period of time to raise an inference of retaliatory motivation.

Charge No.: 2013CF3068
Page 9 of 11

## Complainant's Allegations-Count D:

Complainant, a Swing Package Car Driver, alleges that she was subjected to a reduction in hours on May 1, 2013, in retaliation for filing charges against Respondent and against co-worker Mike Adams with the IDHR on December 3, 2012.

## Respondent's Defenses-Count D:

Respondent denies it reduced Complainant's hours on May 1, 2013, in retaliation for filing charges with the IDHR against it and co-worker Mike Adams on December 3, 2012.

## Investigation Summary-Count D:

A.    **Complainant's Evidence:**

1. Complainant stated that on December 3, 2012, she filed charges with the IDHR against Respondent and Mike Adams (no P/A), a Package Car Driver. Complainant stated that on March 1, 2013, Dave Kimmel (no P/A), Dispatcher Supervisor, assigned her as a helper to drivers from 9:00 a.m. to 1:00 p.m. thereby reducing her hours to four per day. Complainant stated that the reason given for this action was there was not that much work. Complainant stated that because of her seniority she should have been assigned to a regular route.

2. Complainant stated that Kimmel took this action in retaliation for her filing charges with the IDHR. Complainant stated that this adverse action took place following the filing of the charges within such a period of time to raise an inference of retaliatory motivation.

B.    **Respondent's Evidence:**

1. Dave Kimmel (no P/A), Dispatcher Supervisor, denied Complainant was assigned as a driver's helper. Kimmel stated that Complainant was a Swing Package Car Driver, because she did not have enough seniority to be assigned a regular route. Kimmel stated that Respondent puts up a bid sheet bid and swing drivers can bid on open assignments. Kimmel stated that there is always plenty of work and if Complainant bid on multiple routes she would be sure to get an assignment. Kimmel stated that Complainant controls her own work assignments.

2. See Respondent's evidence Count A #1.

C.    **Complainant's Rebuttal:**

1. None offered.

Charge No.: 2013CF3068
Page 10 of 11

## Analysis:

The investigation that Respondent's Retaliation Policy states that Respondent's commitment to integrity includes a responsibility to foster an environment that allows our people to report violations without the fear of retaliation or retribution. No one should be discouraged from using any available channel within the organization. Anyone who retaliates against another employee for reporting known or suspected violations of Respondent's legal or ethical obligations is in violation of the Code and subject to disciplinary action up to and including dismissal. Retaliation may also be a violation of the law, and as such, could subject both the individual offender and Respondent to legal liability. Complainant maintains she was assigned as a driver's helper and her hours were reduced to four hours per day. Complainant maintains that her hours were reduced in retaliation for filing charges with the IDHR on December 3, 2012, against Respondent and her co-worker Mike Adams. Complainant maintains that the adverse action followed the filing of the charges within such a period of time to raise an inference of retaliatory motivation. Respondent's position is that Complainant was a Swing Package Car Driver, and was not assigned as a driver's helper, and controlled her own work assignments. Respondent's position is that Complainant could bid on open assignments.

## Findings and Conclusion-Count D:

A finding of **Lack of Substantial Evidence** is recommended because:

The evidence shows that Complainant filed her charges with the IDHR about five months before the date of alleged harm occurred which is to long of a period of time to raise an inference of retaliatory motivation.

## Witness List:

A. Complainant                                    FFC
   19 S. Hoyne Ave.
   Apt. # B
   Chicago, IL 60612
   (312) 532-7161

B. David Kimmel (no P/A), Scheduler               FFC
   C/o William Walden
   Quarles & Brady LLP
   300 North LaSalle Street, Suite 4000
   Chicago, IL 60654
   (312) 715-5000

C. Marquita Barnes (no P/A), Area Human Resources Manager   FFC
   C/o William Walden
   Quarles & Brady LLP
   300 North LaSalle Street, Suite 4000
   Chicago, IL 60654
   (312) 715-5000

Charge No.: 2013CF3068
Page 11 of 11

**Exhibits:**

A. Verified Response and Good Cause Determination.
B. Respondent's EEO report.
C. Respondent's Professional Conduct and Anti-Harassment policy.
D. Respondent's Retaliation Policy.
E. Record of Supervisor's Discussions with Employee.
F. Employee Mentions List.


IRSHELL
Rev 11/09

BURRELL GR.
EXHIBIT

MEDICAL RECORD

RUSH UNIVERSITY MEDICAL CENTER

BURRELL, LARITA C
MRN: 0618203
DOB: 6/20/1988, Sex: F

---

H&P by Moore, Kristin, MD at 5/21/2013 1:05 PM

| | | |
|---|---|---|
| Author: Moore, Kristin, MD | Service: (none) | Author Type: Resident |
| Filed: 5/23/2013 5:50 PM | Note Time: 5/21/2013 1:05 PM | Note Type: H&P |
| Status: Signed | Editor: Dantz, Bezalel, MD (Attending) | |

### RUSH AMBULATORY BEHAVIORAL HEALTH
### ADULT PSYCHIATRIC EVALUATION

**Date of Encounter:** 5/21/2013      **Time In:** 0900;      **Time out:** 1030

**History Obtained From:** patient and EMR

**IDENTIFYING DATA:**

The patient is a 24 year old female with PMH of asthma and no past psychiatric history who presents as recommended by PCP who was concerned patient was depressed.

**CHIEF COMPLAINT:**
Chief Complaint
Patient presents with
- Depression
- Anxiety

**PRECIPITATING FACTOR(S):** Recommendation by PCP

**CLIENT SERVICE PREFERENCE(S):**
Medication managment and Psychotherapy

**HISTORY OF PRESENT ILLNESS:**
   Patient is a 24 yo F with a PMH of asthma and no past psychiatric history who presents c/o depressive/anxious symptoms in the setting of a hostile work environment. Patient reports that last fall she began to have problems with a co-worker who would make sexually harassing comments to her. She decided not to do anything about it but when it continued to happen she decided to talk with her manager about it. Patient reports her manager did not do anything and accused her of lying about the incidents. She reported what was going on to her union representative but got the same response, she later found out that her union representative was friends with the employee who was harassing her. The patient was very uncomfortable at work and was often tearful on the way to work, because of this she took a 2 month leave as authorized by her PCP. Upon return to work this past January patient has noted other employees treating her differently, she has been getting fewer hours and less desirable work routes (patient has been a UPS driver for the past 8 years). Patient goes to work as much as possible but is so uncomfortable there has had to call off of work on a couple of occasions. Patient has hired a lawyer and they are in the process of trying to get patient transferred to a different department so she will not be around those who were harassing her or finding other accommodations to make her work environment more tolerable.
   The patient notes that since all of this started she has not felt like herself, she has been sad and anxious a lot. Patient no longer going out with friends and finding spending time with her children (2 girls ages 2 and 4) less enjoyable. She has been financially strained as a result of the time off and feels very guilty she can no longer do certain things and buy certain things for her girls. Patient notes last fall she was frequently unable to sleep and that she began eating more than usual and gained about 20 pounds since then. Patient is now frequently having trouble falling asleep as she stays up worrying about what will happen, gets and average of 4 hours sleep per night. On the weekends she finds herself sleeping throughout most of the day. Patient c/o low energy and psychomotor retardation. Patient feels her concentration is fair at work and at home.

Page 1

RUSH UNIVERSITY MEDICAL CENTER

BURRELL,LARITA C
MRN: 0618203
DOB: 6/20/1988, Sex: F

---

**H&P by Moore, Kristin, MD at 5/21/2013 1:05 PM (continued)**

Patient notes anxiety related to work situation and as noted above this keeps her up at night at times. Denies feeling edgy, irritable or tense. Denies experiencing panic attacks. Patient was prescribed clonazepam 0.5 mg pm anxiety which she takes 2-3 times per week when feeling very overwhelmed after work. She notes the clonazepam helps her to calm down and gives her more restful sleep.

Patient denies history c/w previous depressive or manic episodes. Denies h/o AVH or HI. Patient notes feeling paranoid that co-workers and bosses may be trying to find ways to get her fired after she filed the law suit, she otherwise denies paranoia and no delusional thought content appreciatated.

**PAST PSYCHIATRIC HISTORY:**
No previous OP psychiatric care.
No h/o psychiatric hospitalizations
No previous psychotropics other than clonazepam recently prescribed by PCP.

**FAMILY HISTORY OF PSYCHIATRIC ILLNESS:**
Sister - experienced panic attacks, now resolved, does not see psychiatrist

**TOBACCO, ALCOHOL, DRUG HISTORY:**

**Tobacco History**
History
Smoking status
• **Never Smoker**
Smokeless tobacco
• **Not on file**

**Alcohol Use History:**
Reports she used to binge maybe 2 times per month when she would go out with friends, unsure how may drinks at a time because they would not use standard glasses. Patient no longer drinks as she does not like the way she feels after a night of drinking. When patient did use alcohol she denies any negative consequences related to work or social situations.

**Drug Use History:**
Has never used MJ, heroin, cocaine

**PAST MEDICAL HISTORY:**

| Diagnosis | Date |
|---|---|
| • Asthma | |
| • Constipation | |
| • Fatigue | |
| • LSIL (low grade squamous intraepithelial lesion) on Pap smear | 9/23/11 |
| *needs colposcopy* | |

**PAST SURGICAL HISTORY:**

| Procedure | Date |
|---|---|
| • Hx cesarean section | 12/06/10 |
| *no maternal complications* | |

Page 2

RUSH UNIVERSITY MEDICAL CENTER    BURRELL,LARITA C
                                  MRN: 0618203
                                  DOB: 6/20/1988, Sex: F

**H&P by Moore, Kristin, MD at 5/21/2013  1:05 PM (continued)**
**Date of Last Known Physical Examination:** Within one month

**REVIEW OF SYSTEMS:**
Constitutional: normal
Eyes: normal
Ears/Nose/Throat: normal
Respiratory: normal
Cardiac/Vascular: normal
GI: normal
GU: normal
Musculoskeletal: normal
Skin: normal
Neurologic: normal
Psychiatric: See HPI
Endocrine: normal
Hematology/Lymphatics: normal
Allergy/Immunology: normal

**BASELINE ASSESSMENTS:**
PAIN ASSESSMENT (Patient reports Pain):  No
FALL ASSESSMENT: Falls in the last 12 months:  No
FUNCTIONAL ASSESSMENT (Able toperform all ADLs): Yes
BMI &  NUTRITION STATUS: Overweight (BMI = 25.0-29.9)
VISUAL IMPAIRMENT:None
HEARING IMPAIRMENT:  None
INFECTIOUS DISEASERISK:  None

**MEDICATIONS:**
Current Outpatient Prescriptions

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • HYDROcodone-acetaminophen (NORCO) 5-325 mg PO tablet | take 1-2 Tablets by mouth every 6 hours as needed for Pain. | 20 Tablet | 0 |
| • iBUprofen (MOTRIN) 600 mg PO tablet | take 1 Tablet by mouth every 8 hours as needed for Pain. Best if taken with food. | 30 Tablet | 0 |
| • diazepam (VALIUM) 5 mg PO tablet | take 1 Tablet by mouth every 8 hours as needed for Muscle Spasms. | 15 Tablet | 0 |
| • **clonazePAM (KLONOPIN) 0.5 mg PO tablet** | **take 1 Tablet by mouth nightly. 1/2 - 1 tablet bid** | **15 Tablet** | **0** |
| • senna-docusate (SENOKOT-S) PO tablet | take 1 Tablet by mouth two times daily as needed for Constipation. | 30 Tablet | 1 |
| • diphenhydrAMINE (BENADRYL) 50 mg PO capsule | take 1 Capsule by mouth nightly as needed for Insomnia. | 20 Capsule | 0 |
| • albuterol 90 mcg/Actuation INHL Aero inhaler | inhale 1-2 Puffs by mouth every 4 hours as needed for Shortness of Breath and Wheezing. | 1 Inhaler | 0 |
| • multivitamin PO tablet | take 1 Tablet by mouth daily. | | |

**ALLERGIES:**

Page 3

RUSH UNIVERSITY MEDICAL CENTER

BURRELL,LARITA C
MRN: 0618203
DOB: 6/20/1988, Sex: F

H&P by Moore, Kristin, MD at 5/21/2013 1:05 PM (continued)
Review of patient's allergies indicates no known allergies.

## SOCIAL HISTORY:

**Developmental History:**
Grew up in Chicago area, has 2 older sisters ages 27 and 31. Close with mom. Patient's father left the family when she was 4 yo, returned and has had intermittent contact with him since 4th grade. Close with mom and 27 yo sister.

**Education:**
Finished HS. Started college to get a degree in child care but dropped out after becoming pregnant.

**Work History:**
Has worked from UPS x 8 years.

**Relationships:**
Single. Has amicable relationship with the father of her 2 children who she was with for 5 years.

**Living Situation:**
Lives with her two daughters, ages 2 and 4.

## MENTAL STATUS EXAMINATION:
Level of consciousness: within normal limits
Appearance: well developed, well nourished, well groomed, and no apparent distress
Muscle Strength/Tone: normal
Behavior/Motor: no abnormalities noted
Attitude toward examiner: cooperative, pleasant and attentive
Speech: rate, volume, articulation, coherence, and spotaneity are all normal.
Language: normal
Mood: "worried"
Affect: resricted, mildly dysthymic and mood congurent
Thought processes: logical and linear and goal directed
Thought association: intact
Thought content: Denies Suicidal Ideation or Homicidal Ideation
Denies Auditory or Visual Hallucinations
Orientation: oriented to person, place, and time
Concentration: Not formally assessed
Memory: intact for historical events, not formally assessed
Fund of knowledge: normal
Abstract thinking: Not formally assessed
Insight: fair
Judgment: fair

## DATA:
Results for BURRELL, LARITA C (MRN 0618203) as of 5/21/2013 13:31

|  | Ref. Range | 4/24/2013 02:30 |
|---|---|---|
| SODIUM | Latest Range: 137-147 MMOL/L | 140 |
| POTASSIUM | Latest Range: 3.4-5.3 MMOL/L | 3.5 |
| CHLORIDE | Latest Range: 99- | 107 |

Page 4

RUSH UNIVERSITY MEDICAL CENTER

BURRELL,LARITA C
MRN: 0618203
DOB: 6/20/1988, Sex: F

**H&P by Moore, Kristin, MD at 5/21/2013 1:05 PM (continued)**

| | 108 MMOL/L | |
|---|---|---|
| CO2 TOTAL | Latest Range: 22-29 MMOL/L | 25 |
| UREA NITROGEN | Latest Range: 6-21 MG/DL | 13 |
| CREATININE | Latest Range: 0.65-1.00 MG/DL | 0.80 |
| eGFR AFR AMERICAN | No range found | >=60 |
| eGFR NON AFR AMER | No range found | >=60 |
| GLUCOSE, BLOOD | Latest Range: 60-99 MG/DL | 138 (H) |
| TOTAL PROTEIN | Latest Range: 6.0-8.2 G/DL | 6.8 |
| ALBUMIN | Latest Range: 3.5-5.0 G/DL | 3.8 |
| CALCIUM | Latest Range: 8.7-10.7 MG/DL | 9.5 |
| BILIRUBIN TOTAL | Latest Range: 0.2-1.3 MG/DL | 0.3 |
| ALK PHOSPHATASE | Latest Range: 30-125 U/L | 53 |
| AST | Latest Range: 3-44 U/L | 18 |
| ALT | Latest Range: 0-40 U/L | 16 |
| TSH | Latest Range: 0.350-4.940 uIU/ML | 1.245 |
| WHITE BLOOD COUNT | Latest Range: 4.00-10.00 TH/UL | 5.98 |
| RED BLOOD COUNT | Latest Range: 4.00-5.20 MIL/UL | 4.78 |
| HEMOGLOBIN | Latest Range: 12.0-16.0 GM/DL | 13.1 |
| HEMATOCRIT | Latest Range: 37.0-47.0 % | 39.9 |
| MCV | Latest Range: 82.0-103.0 FL | 83.5 |
| MCH | Latest Range: 26.0-34.0 PG | 27.4 |
| MCHC | Latest Range: 30.0-37.0 GM/DL | 32.8 |
| RDW | Latest Range: 11.5-14.5 % | 14.1 |
| PLATELET COUNT | Latest Range: 150-399 TH/UL | 262 |
| NEUTROPHIL # | Latest Range: 1.84-7.80 TH/UL | 2.61 |
| IMMATURE GRAN # | Latest Range: 0.00-0.15 TH/UL | 0.01 |
| LYMPHOCYTE # | Latest Range: 0.72-5.20 TH/UL | 2.85 |
| MONOCYTE # | Latest Range: 0.12-1.00 TH/UL | 0.35 |
| EOSINOPHIL # | Latest Range: 0.00-0.50 TH/UL | 0.11 |
| BASOPHIL # | Latest Range: 0.00-0.30 TH/UL | 0.05 |
| NEUTROPHILS % | Latest Range: 46.0-78.0 % | 43.6 (L) |
| IMMATURE | Latest Range: 0.0- | 0.2 |

Page 5

RUSH UNIVERSITY MEDICAL CENTER

BURRELL,LARITA C
MRN: 0618203
DOB: 6/20/1988, Sex: F

**H&P by Moore, Kristin, MD at 5/21/2013  1:05 PM (continued)**

| GRAN % | 1.5    % | |
|---|---|---|
| LYMPHOCYTE % | Latest Range: 18.0-52.0    % | 47.7 |
| MONOCYTE % | Latest Range: 3.0-10.0    % | 5.9 |
| EOSINOPHIL % | Latest Range: 0.0-6.0    % | 1.8 |
| BASOPHIL % | Latest Range: 0.0-3.0    % | 0.8 |

## FORMULATION:

24 yo F with no previous psychiatric history presents c/o depressive/anxious symptoms x several months in the setting of a hostile work environment. Patient meets criteria for a MDE as noted above, also with significant anxiety related to work stressor. Patient has no previous h/o psychiatric complaints, no family predisposition to depression though at least one sister who suffered from panic attacks. Patient's father was not around as she was growing up, he is now in her life sporadically and frequently just to ask for financial support which has been confusing and stressful for the patient. The patient also notes being teased when she was young by friends and family about her dark skin which has had an impact on her self-esteem. Patient has a good support system between her mother and one of her sisters, also with 3 very close friends and a close religious community.

## DIAGNOSTIC IMPRESSION:

**Axis I:**
1.  **Major depressive episode (296.20)**


**Axis II:**  Deferred

**Axis III: General Medical Condition**

Diagnosis                                                                      Date
  - Asthma
  - Constipation
  - Fatigue
  - LSIL (low grade squamous intraepithelial lesion) on Pap smear         9/23/11
      *needs colposcopy*


**Stressors (Axis IV):**  Work environment

**Psychiatric Global Assessment of Function (Axis V):**
Current Global Assessment of Function is:  41-50:  *Serious symptoms or any serious impairment in social, occupational, or school functioning*
Highest Global Assessment of Function in the past year is:  71-80:  *If symptoms present, they are transient & expectable reactions to psychosocial stressors with no more than slight impairment in social, occupational, or school functioning*

**Plan:**
**PROBLEM: MDE**
Biological Treatment:  Will likely start SSRI, will obtain collateral from PCP and review medical chart to determine if there are any contraindications. Continue clonazepam 0.5 mg prn anxiety.

Page 6

BURRELL GROUP

EXHIBIT

JOURNAL / DIARY

2012

3

~~Monday July 8th~~ I ~~bid on d.~~

June 6th I B.d on John Hughes
route. ~~On~~ Monday June 10th I
came to work to do the route and
Aldflo Flores already left out and
as I told them that I bid on
it they just ignored me and told
me I had to do BoBo route
which I don't know at all. So
I asked them could they train me
and they ~~test~~ said I have to go
by myself. I consited that I needed help.
and asked could me and Mario go
out there together. They told me no
but sent Bankston and Mario on a
route together and sent me home for
they day, June 11th Racheal put
me on David Lewis route and I was
asking her about John Hughes and
she got Chris the Manager and I
was try to call a union steward and
he started snapping on me saying

he didn't care and that he's gonna take
5mins off of my time because I
was trying to call a union stewart.

Tues June 25th. They put me on
Mario route for the first time which
had 203 stops. they sent me help
but they told the driver to only
take 10 stops from me. So I ended
up with 203 stops. I got off at
830

friday June 21st at 3:12 Marketa Bannes

Called me asking me a lot of questions
about whats going on at work I told
her everything and she said their gonna
solve it. But it seems life after that
its only getting worse.

RECEIVED

FEB 24 2014

HUMAN RIGHTS COMMISSION
HP USPS FX MM ID

STATE OF ILLINOIS
COMMISSION ON HUMAN RIGHTS
SEX DISCRIMINATION/HARASSMENT

In the Matter of:                     )
Larital Burrell,                      )   ALS #13 -0509
                  Complainant,        )   Charge # 2013 CN-1460
      vs.                             )   EEOC-N/A
                                      )   Administrative Law Judge Michael J. Evans
Mike Adams,                           )   100 W. Randolph, Room 500
                  Respondent.         )   Chicago, Illinois
                                      )

COMPLAINANT'S REQUEST TO ADMIT TO DEFENDANT and TO
PRODUCE EVERY DOCUMENT RELATIVE TO THE REQUEST TO ADMIT

NOW COMES the Complainant Larita Burrell, by and through her attorney,
Robert L. Anderson, Esq., pursuant to the Rules of the Illinois
Human Rights Commission, the Illinois Code of Civil Procedure,
et. seq. requesting To Admit from the Respondent Mike Adams,
stating the following and requests answers, responses and
objections be made under oath in 28 days.

## A. Definitions and Instructions

1. These Requests to Admit Instructions are defined in the
Directions and Instructions from the Interrogatories to the
Respondent, are continuing in character and supplementary
answers should be filed pursuant to applicable codes, rules and
statutes, if further or different information is obtained.

2. PRODUCE DOCUMENTS THAT MAY BE ASSOCIATED WITH THE ANY
REQUESTS TO ADMIT.

B. REQUESTS TO ADMIT THE FOLLOWING:

**REQUEST #1:** For the relevant time, each and such other persons were at UPS' *work place* organizational structures were involved or associated and had a role in the herein situation

a). Mike Adams; b). Abe (Last name unknown); c). Mr. Butler;

d). Mr. Little; e). Marquita Barnes; f). Paul Rakow; g). Larry Davis; h). Dave Kimball; i). Mike Simmons j). Others

ADMIT          DENY

**REQUEST #2:** UPS had policies and procedures, and the like that were provided to Mike Adams at some point upon being hired by UPS that Mike Adams received and signed for.

ADMIT          DENY

**REQUEST #3:** Mike Adams was given the terms and conditions of his employment, with duties, chain of command, personnel practices, employment rights, disciplinary processes and procedures and he signed and acknowledged receipt of the same as receiving the documents and information.

ADMIT          DENY

**REQUEST #4:** At all relevant times, Mike Adams subjected the complainant to unwelcomed sexual comments by stating or insinuating to the complainant that she was "messing around" with one of her co-workers.

ADMIT  DENY

**REQUEST #5**: At all relevant times, Mike Adams subjected the complainant to unwelcomed sexual comments by stating or insinuating to the complainant that: "if I was a few years younger, you'd be sprung on me?"

ADMIT DENY

**REQUEST #6**: Aside from Mike Adams and the complainant, there were other UPS employees present when Mike Adams made his alleged statements to the complainant.

ADMIT DENY

**REQUEST #7**: Mike Adams' superior called him in and met with him regarding the allegations.

ADMIT DENY

**REQUEST #8**: After the above meeting, Mike Adams came out that same day, met with and apologize to the complainant.

ADMIT DENY

**REQUEST #9**: Months later, after the apology to the complainant

Mike Adams again subjected the complainant to unwelcomed sexual
comments by stating: "I could tell you easy."

ADMIT        DENY

**REQUEST #10**: Mike Adams was never disciplined verbally, in
writing, loss of pay or otherwise, for any of the alleged
unwelcomed sexual comments.

  ADMIT        DENY

**REQUEST #11**: Mike Adams was privity to some of the general
community becoming aware of the alleged unwarranted sexual
comments, including calling her the "B," "W" and texting the
complainant within recent days/weeks.

ADMIT        DENY

**REQUEST #12**: After the alleged initial incident, Mike Adams was
privity to the complainant being advised to "get use to it"
since the sexual comments were occurring with other females

ADMIT        DENY

**REQUEST #13**: During Mike Adams' employment with UPS, he
committed acts of sexual misconduct against a UPS female
employee while on duty with UPS.

ADMIT        DENY

**REQUEST #14**: Mike Adams had friends or an agent to attempt to have the complainant drop her case against him.

ADMIT          DENY

**REQUEST #15**: Mike Adams separated from his employment with UPS, but was returned back to UPS.

ADMIT          DENY

**REQUEST #16** To Mike Adams' knowledge, at all relevant times, no other UPS employee other than upon the complainant's complaint of retaliation, were there changes in her work assignments, routes, number of hours and the like.

ADMIT          DENY

**REQUEST #17**: UPS maintained evaluations or appraisals for Mike Adams by UPS for 2 years before and after the time period of the alleged infractions with the complainant.

ADMIT          DENY

SIGNED AND SWORN TO OR AFFIRMED
BEFORE ME ____August____ 11, 2014.

AFFIANT'S SIGNATURE

Print affiant's name: _Muhrel Adami_

NOTARY PUBLIC

MICHAEL P. COHEN
OFFICIAL SEAL
Notary Public - State of Illinois
My Commission Expires
December 15, 2018

Respectfully submitted,

_Robert L. Anderson_

Under penalties of perjury by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that I verily believe the same to be true

_Robert L. Anderson_

I hereby certify that
this was hand delivered to
175 W. Jackson, #2275
Chicago, IL on August
19, 2014

_Michael P Cohen_

Robert L. Anderson, Esq.
for Larita Burrell
175 W. Jackson #2275
Chicago, Illinois 60604
(312) 427-3536
Attorney #21846