# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| LARITA BURRELL, | ) | |
| Plaintiff, | ) | Case No. 14-cv-5127 |
| v. | ) | Judge Robert M. Dow, Jr. |
| UNITED PARCEL SERVICE, INC., | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Larita Burrell's motion for reconsideration [46] and Defendant United Parcel Service, Inc.'s bill of costs [44]. For the reasons set forth below, Plaintiff's motion for reconsideration [46] is denied. Defendant's bill of costs [44] is granted, and Defendant is awarded $3,044.55 in costs.

**I.     Background**

The facts of this case are set out in the Court's memorandum and opinion order [42] granting Defendant's motion for summary judgment. See *Burrell v. United Parcel Service, Inc.*, 2016 WL 612854, at *2–6 (N.D. Ill. Feb. 16, 2016).

To recap, Plaintiff claims that Defendant violated Title VII by subjecting her to a hostile work environment based on sexual harassment. Plaintiff also alleges that Plaintiff violated Title VII by retaliating against her for filing a complaint with the Illinois Department of Human Rights ("IDHR"). More specifically, she claims that she was denied her preferred driving routes, resulting in a reduction in her hours, and that her supervisor wrote her up for attendance infractions. The Court granted Defendant's motion for summary judgment on both claims. As to the first claim, the Court concluded that Plaintiff failed to establish that the complained-of

conduct was objectively pervasive or severe. Alternatively, the Court held that Defendant could not establish employer liability because Defendant took prompt and reasonable steps to remedy the harassment once it was on notice. As to the second claim, the Court concluded that Plaintiff's retaliation claim failed under both the direct and indirect methods because she cannot establish that she suffered an adverse employment action as a result of filing her charge with the IDHR.[1] Alternatively, the Court held that Plaintiff failed to establish that a causal connection existed between Plaintiff's charge filed with the IDHR and the allegedly-adverse employment actions that followed. Judgment was entered in favor of Defendant's. [See 44.]

Following the entry of judgment, Defendant filed a bill of costs [45], seeking the recovery of $3,044.55 for costs associated with the litigation of this matter. Plaintiff filed a motion for reconsideration [46], arguing that there are disputed issues of material fact that require resolution by trial.

## II.     Motion for Reconsideration

### A.     Legal Standard

Plaintiff moves for reconsideration under Federal Rule of Civil Procedure 60(b), which creates grounds for relief from a "final judgment, order or proceeding." Fed. R. Civ. P. 60(b). Although Rule 60(b) includes a catch-all provision permitting relief for any reason that justifies it, "relief from a judgment under Rule 60(b) is an extraordinary remedy and is granted only in exceptional circumstances." *Bakery Mach. & Fabrication, Inc. v. Traditional Baking, Inc.*, 570

---

[1] The Seventh Circuit recently clarified that "district courts must stop separating 'direct' from 'indirect' evidence and proceeding as if they were subject to different legal standards." *Ortiz v. Werner Enters., Inc.*, ––– F.3d –––, 2016 WL 4411434, at *5 (7th Cir. Aug. 19, 2016). This change in the law does not impact the Court's underlying summary judgment opinion. As the Court noted, "[b]ecause an adverse employment action is a prerequisite to stating a prima facie case of discrimination under both the direct and indirect methods, and because the Court has concluded that Plaintiff did not suffer an adverse employment action, the Court must grant summary judgment in Defendant's favor." *Burrell v. United Parcel Serv., Inc.*, ––– F.3d –––, 2016 WL 612854, at *12 (N.D. Ill. Feb. 16, 2016).

2

F.3d 845, 848 (7th Cir. 2009) (citation and internal quotation marks omitted). Specifically, it is well-established that "[m]otions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Conditioned Ocular Enhancement, Inc. v. Bonaventura*, 458 F. Supp. 2d 704, 707 (N.D. Ill. 2006) (quoting *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996)).

In regard to the "manifest error" prong, the Seventh Circuit has explained that a motion to reconsider is proper when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (citation and internal quotation marks omitted); see also *Wiegel v. Stork Craft Mfg., Inc.*, 2012 WL 2130910, at *2 (N.D. Ill. June 6, 2012) ("Reconsideration is not appropriate where a party seeks to raise arguments that could have been raised in the original briefing."); *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) ("A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'").

With respect to the second prong, the Seventh Circuit has explained that a motion to reconsider may be appropriate if there has been "a controlling or significant change in the law or facts since the submission of the issue to the Court." *Bank of Waunakee*, 906 F.2d at 1191 (citation and internal quotation marks omitted). Because the standards for reconsideration are exacting, our court of appeals has stressed that issues appropriate for reconsideration "rarely arise and the motion to reconsider should be equally rare." *Id.*

B.    Analysis

In arguing that the Court should reconsider its ruling granting summary judgment for Defendant, Plaintiff neither attacks the Court's prior opinion nor references any manifest errors of law or newly discovered evidence. Instead, Plaintiff—who was represented by legal counsel—has offered two narratives [49, 53] that are best described as retellings of certain factual and procedural disputes in this case, expressing Plaintiff's general dissatisfaction with the Court's summary judgment ruling.

One of Plaintiff's main arguments is that certain affidavits, including that of UPS human resources manager Marquita Barnes, should be stricken because they are not true. For example, Plaintiff highlights Ms. Barnes' statement that "[u]ntil November 2012, Ms. Burrell made no formal or informal complaints to UPS's management about any comments [Mr. Adams, the alleged harasser] allegedly made in July 2012." [24-2, ¶ 18.] To recap, in July 2012, Plaintiff says that she overheard Mr. Adams accuse his supervisor of showing Plaintiff favoritism because the supervisor allegedly was sleeping with Plaintiff. Plaintiff says that UPS investigated this incident between Mr. Adams and his supervisor in July 2012, and argues that "[i]f there was neither a formal or informal complaint as Barnes alleged, then why did [UPS] investigate the incident?" [46, at 2.] Plaintiff claims that she requested discovery about this investigation but didn't receive anything.

Plaintiff's argument does not present a sufficient ground for reconsideration. Plaintiff does not allege any legal errors or factual misstatements in the Court's prior analysis, nor does she point to any new evidence that has come to light since summary judgment. Again, "[r]econsideration is not appropriate where a party seeks to raise arguments that could have been raised in the original briefing." *Wiegel*, 2012 WL 2130910, at *2. If Defendant failed to comply

with Plaintiff's discovery requests by failing to produce evidence of this investigation, Plaintiff should have raised that issue during discovery.[2] See *Kaplan v. City of Chicago*, 2009 WL 1940789, at *3 (N.D. Ill. July 6, 2009) ("A Rule 60(b)(3) motion based upon alleged concealment from the court will not succeed when the movant was also aware of the information concealed."). And if Plaintiff disagrees with facts as presented by Defendant in support of its motion for summary judgment, Plaintiff should have objected to those facts at that time.

In addition, Plaintiff fails to explain how this July 2012 investigation of Mr. Adams would affect the Court's summary judgment analysis. The Court already considered this July 2012 instance of harassment as the first of three instances alleged by Plaintiff, concluding that the complained-of conduct was not objectively pervasive or severe. Whether UPS investigated the incident in July, November, both, or neither is inconsequential to that ruling. Nor does this evidence disrupt the Court's alternative ruling that Defendant took prompt and reasonable steps to remedy the harassment once it was on notice, because the Court's analysis was *based on Plaintiff's own testimony about this July 2012 investigation*. The Court quoted Plaintiff's deposition testimony that after Mr. Adams made this allegedly harassing statement in July 2012, Mr. Adams' supervisor "instantly took him to the office" with the manager, and Mr. Adams "came back and apologized" to Plaintiff, and "so [she] left it alone." [24-4, at 33.] In other words, the Court already considered (and relied on) this evidence, and Plaintiff's reiteration of her prior testimony is not a ground for reconsideration.[3]

---

[2] Defendant says that Plaintiff "never before raised any issues regarding UPS's willingness to cooperate during discovery," and "[s]he never sent any Rule 37 deficiency concerns to UPS, and she never filed any motions to compel with the Court." [49, at 4.]

[3] Plaintiff's argument does not establish the falsity of Ms. Barnes' affidavit either. Ms. Barnes says that *Plaintiff* did not report the July 2012 incident until November 2012. Plaintiff, on the other hand, says that *someone other than her* must have reported the incident in July 2012, or else UPS wouldn't have conducted an investigation at that time. These statements are not inconsistent.

Plaintiff attacks several other statements in Ms. Barnes' affidavit, but Plaintiff's precise arguments and how those arguments allegedly impact the Court's summary judgment ruling are unclear. [See 46, 2–3.] Plaintiff's arguments are conclusory, lack evidentiary support, and are disconnected from the legal framework governing her claims and her motion for reconsideration. For example, Plaintiff describes one of Ms. Barnes' statements as "[v]ery disingenuous," but then supports her allegation simply by saying that the opposite is true, without any evidentiary support or any explanation as to the relevance of the purported misrepresentation. Plaintiff does not identify any new evidence or any legal errors (manifest or otherwise), or provide any convincing support that any of the statements in the affidavits were actually false, and thus her arguments are unpersuasive.

Plaintiff also criticizes Defendant's employee-evaluation procedures and expresses her dissatisfaction at having had to read UPS's rather lengthy Labor Management Agreement, which Defendant apparently produced during discovery. [See 46, at 3–4.] But again, Plaintiff fails to tie her general gripes about UPS's human resources department and the litigation process to any grounds that might warrant reconsideration of the Court's summary judgment ruling, and thus the arguments are unavailing as well.

In her reply brief, Plaintiff discusses "the companion case of *Burrell v. Adams*," which apparently is pending before the Illinois Human Rights Commission. [See 53, at 2.] Plaintiff claims that since the Court's ruling on summary judgment, Defendant successfully moved to quash certain subpoenas issued by Plaintiff seeking to have several UPS employees testify in that matter. Plaintiff argues that because Defendant's "cadre of lawyers are poised to object to * * * [Plaintiff's] key witness to appear in the [*Burrell v. Adams*] matter," that "scenario makes this case subject to [r]eview under 'Rule 60(b)(1) . . . surprise . . . (2) . . . (6).'" [53, at 3.] This

argument is unavailing. Plaintiff has failed to explain why Defendant's actions in an unrelated administrative proceeding have anything to do with this Court's ruling on Defendant's motion for summary judgment. While it may have been a "surprise" to Plaintiff that Defendant successfully opposed subpoenas in that matter, Plaintiff has not identified any "surprises" in this case that would justify reconsideration of the Court's summary judgment ruling. And to the extent that Plaintiff is arguing it, Defendant's actions in the administrative proceeding do not constitute "newly discovered evidence" or "any other reason" for granting relief from judgment here. See Fed. R. Civ. P. 60(b)(2), (6).

The remainder of Plaintiff's reply brief contains a series of attacks on the declarations and affidavits offered by Defendant in support of its motion for summary judgment, wherein Plaintiff accuses Defendant of being "hypocritical" and engaging in "very, very bad conduct." [53, at 3–4.] But much like the similar arguments in Plaintiff's opening brief, these arguments are untethered from any of the legal issues that govern this dispute and do not reference any manifest errors or newly discovered evidence. Because Plaintiff has failed to state any grounds for relief from judgment, Plaintiff's motion for reconsideration [46] must be denied.

### III.  Bill of Costs

Also before the Court is Defendant's bill of costs [44], in which Defendant seeks to recover $3,044.55 in costs associated with the litigation of this matter.

Rule 54(d)(1) provides that "costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). The rule "provides a presumption that the losing party will pay costs but grants the court discretion to direct otherwise." *Rivera v. City of Chicago*, 469 F.3d 631, 634 (7th Cir. 2006). However, the Seventh Circuit recognizes "only two situations in which the denial of costs might be warranted: the first involves misconduct of the party seeking costs, and the second involves a pragmatic exercise of discretion to deny or reduce a costs order

if the losing party is indigent." *Mother & Father v. Cassidy*, 338 F.3d 704, 708 (7th Cir. 2003). "Generally, only misconduct by the prevailing party worthy of a penalty (for example, calling unnecessary witnesses, raising unnecessary issues, or otherwise unnecessarily prolonging the proceedings), or the losing party's inability to pay will suffice to justify denying costs." *Congregation of the Passion, Holy Cross Province v. Touche, Ross & Co.*, 854 F.2d 219, 222 (7th Cir. 1988). In other words, only "exceptional circumstances" warrant a complete denial of costs. *Overbeek v. Heimbecker*, 101 F.3d 1225, 1228 (7th Cir. 1996).

Taxing costs against the non-prevailing party requires two inquiries: (1) whether the cost is recoverable; and (2) whether the amount assessed is reasonable. See *Majeske v. City of Chicago*, 218 F.3d 816, 824 (7th Cir. 2000). The list of recoverable costs pursuant to 28 U.S.C. § 1920 includes (1) fees of the clerk and marshal, (2) fees for transcripts, (3) witness fees and expenses, (4) fees for copies of papers necessarily obtained for use in the case, (5) docket fees, and (6) compensation for court-appointed experts and interpreters. See *Republic Tobacco Co. v. N. Atl. Trading Co., Inc.*, 481 F.3d 442, 447 (7th Cir. 2007). Defendant claims two categories of costs: (1) fees for deposition transcripts ($1,212.80) and (2) fees for medical records ($1,831.75). In total, Defendants claim costs in the amount of $3,044.55.

### A. Medical Records Fee – 28 U.S.C. § 1920(4)

Defendant claims $1,831.75 in fees for obtaining copies of Plaintiff's medical records, which includes $1,637.14 for records from Rush University Medical Center and $194.61 for records from Rush Oak Park Hospital. [44, at 3; 44-2, at 2–3.]

The fees in question are covered by 28 U.S.C. § 1920(4), which allows for "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." See *Tchemkou v. Mukasey*, 517 F.3d 506, 513 (7th Cir. 2008). Courts interpret this section to mean that photocopying charges for discovery and court copies

8

are recoverable, but charges for copies made for attorney convenience are not. See *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000); *McIlveen v. Stone Container Corp.*, 910 F.2d 1581, 1584 (7th Cir. 1990). Because Plaintiff's medical history was relevant to her claim for damages in this matter, the expense appears reasonable. See *Finchum v. Ford Motor Co.*, 57 F.3d 526, 534 (7th Cir. 1995) (concluding that the district court did not abuse its discretion in awarding $2,536.89 for costs relating to copies of medical records where the reasonableness of obtaining the documents was "readily apparent"). Defendant is entitled to $1,831.75 in medical records fees.

### B. Court Reporting & Transcription Fees – 28 U.S.C. § 1920(2)

Defendants seek $1,212.80 in court reporting and transcription fees pursuant to 28 U.S.C. § 1920(2). [See 44, at 3; 44–1, at 2–3.] The Court awards deposition charges if the deposition appears reasonably necessary in light of the facts known at the time of the deposition. See *Little v. Mitsubishi Motors N. Am., Inc.*, 514 F.3d 699, 702 (7th Cir. 2008) (per curiam); *Mother & Father*, 338 F.3d at 708. Under Northern District of Illinois Local Rule 54.1(b), the costs of a transcript shall not exceed the regular copy rate established by the Judicial Conference of the United States. See N.D. Ill. L.R. 54.1(b). That rate is currently $3.65 per page for an original transcript, $4.25 per page for a 14-day transcript, $4.85 per page for a 7-day transcript, $6.05 per page for a daily-rate transcript.

Defendant only took one deposition in this case: the deposition of Plaintiff. The receipts show that the court reporter attendance fee was $468.75, and the transcript fee was $1,112.48 ($4.09 per page, 272 pages in total). [See 44-1, at 2–3.] In its bill of costs, Defendant has voluntarily reduced those charges "in deference to Local Rule 54.1," [45, at 2], including a reduction in the court reporter attendance fee from $468.75 to $220.00 and a reduction in the price per page of the transcript from $4.09 to $3.65. These costs, as reduced, are recoverable.

9

Because the depositions and witness fees appear reasonably necessary and (as adjusted by Defendant) are billed at rates within the range of those approved by the Judicial Conference, Defendant is entitled to $1,212.80 for court reporting and transcription fees.

### C. Plaintiff's Indigency

Despite Rule 54(b)'s "presumption that the losing party will pay costs," the Rule nonetheless "grants the court discretion to direct otherwise." *Rivera*, 469 F.3d at 634. One recognized situation in which courts reduce or deny costs is when "the losing party is indigent." *Mother & Father*, 338 F.3d at 708. Plaintiff makes such a claim here, alleging that she is a single mother of three who has had to borrow large sums of money from her family to pay for medical expenses, food, housing, clothing, and other necessities for her and her three children. Plaintiff states that "[s]he is financially embarrassed," and that "[s]he cannot pay these costs that UPS requests." [48, at 5–6.] Defendant did not respond to Plaintiff's claim of indigency.

To assess a party's claim to indigency, courts often refer to the government's poverty guidelines as a reference (https://aspe.hhs.gov/poverty-guidelines). According to the poverty guidelines, the poverty level for a household of four is $24,300. Plaintiff did not provide the Court with any information about her current employment status or her current income, rendering the Court unable to make any determinations regarding Plaintiff's indigency. However, on July 22, 2016, the Court gave Plaintiff the opportunity to remedy this shortcoming by instructing her to complete the *in forma pauperis* application and file it on the Court's docket on or before August 5, 2016. [See 55.] The Court invited Plaintiff to "supplement the form with any additional information that she feels would be relevant to the Court's assessment of her ability to pay the requested costs." [*Id.*] But the Court warned Plaintiff that if she did not respond by August 5, 2016, "the Court [would] assume that Plaintiff no longer wishes to make a claim of indigency." [*Id.*] As of the date of this order, Plaintiff has not responded to the Court's request.

Thus, the Court assumes that Plaintiff has abandoned her claim for indigency, and Defendant's bill of costs will not be denied on this basis. Defendant is entitled to $3,044.55 in costs associated with the litigation of this matter.

**IV.     Conclusion**

For the foregoing reasons, Plaintiff's motion for reconsideration [46] is denied. Defendant's bill of costs [44] is granted, and Defendant is awarded $3,044.55 in costs.

Dated: September 8, 2016

_____
Robert M. Dow, Jr.
United States District Judge